1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SARAH PEREZ, ET AL.,

                    Plaintiffs,

        v.

STATE FARM MUTUAL
AUTOMOBILE INS. CO., ET AL.,

                    Defendants.

Case No.: C-06-01962 JW (PSG)

**ORDER GRANTING-IN-PART AND
DENYING-IN-PART PLAINTIFFS'
MOTION TO COMPEL**

(Docket No. 195)

Plaintiffs Sarah Perez, Michelle Lackney, Rachel Stewart, and Rachel Hardyck move to compel Defendants General Insurance Company ("GEICO") and Allstate Insurance Company ("Allstate") to produce documents and to provide further interrogatory responses. Plaintiffs also request that the court extend the deadline to file expert disclosures.[1] Both GEICO and Allstate oppose the motion. Having reviewed the papers and considered the arguments of counsel, Plaintiffs' motion to compel is GRANTED-IN-PART and DENIED-IN-PART.

## I.  BACKGROUND

In this antitrust action under the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, 16750(a), and 17200, Plaintiffs allege that Defendants conspired to use sub-standard, non-OEM

---

[1]    The undersigned declines to rule on this or any other requested change to the pretrial scheduling order.  Such requests are properly directed to the presiding judge.

ORDER, *page 1*

"crash" parts for their customer vehicles.  According to Plaintiffs, by reducing the supply of policies providing coverage for OEM crash parts, Defendants' conduct had the effect of raising and maintaining premiums for automobile insurance above competitive levels that would have prevailed for the coverage they actually provided.  To further their conspiracy, Plaintiffs allege Defendants established, financed, and directed a sham organization known as Certified Automotive Parts Association ("CAPA") to certify the non-OEM crash parts as acceptable substitutes for crash parts provided by OEMs.  Because of the significant market share held by Defendants in the automobile insurance industry, Plaintiffs allege that Defendants have been able to coordinate their scheme by requiring that auto repair shops install: (1) CAPA-certified imitation parts; (2) non-CAPA-certified imitation parts; and (3) parts salvaged from wrecked or totaled (including flood-damaged) automobiles.  Plaintiffs further allege that Defendants terminated or directed business away from auto repair shops that were unwilling or reluctant to perform as requested.

After two dismissal and two remands from the Ninth Circuit, Plaintiffs have filed a Third Amended Complaint ("TAC") and now seek certification of four proposed classes.  Chief Judge Ware has bifurcated discovery.  Class discovery is scheduled to close on May 13, 2011.[2]

## II.  DISCUSSION

### A.     Documents from Third-Party Vendors

Plaintiffs move to compel Allstate and GEICO to produce documents responsive to requests 1(e), 1(f), 2(e), 7, 8 and 20 in the possession of third-party vendors such as CCC and Audatex (formerly known as ADP).  These third-party vendors process insurance estimates for crash parts, including estimates issued for repairs using non-OEM parts at issue in this action.  Specifically, Plaintiffs seek data compilations and reports showing, among other things, the

---

[2]     The court further notes that on December 22, 2010, Defendants jointly moved to dismiss the TAC.  Defendants State Farm Mutual Automobile Insurance Co. ("State Farm") and Liberty Mutual Insurance Company ("Liberty Mutual") separately moved for summary judgment.  After the February 15, 2011 hearing on the pending motion, on March 23, 2011, Judge Ware denied the joint motion to dismiss, denied the summary judgment motion, and granted Plaintiffs' Rule 56(d) motion for further discovery.  As previously ordered, the parties shall appear on April 14, 2011 to discuss their respective proposals for implementing the discovery plan ordered by Judge Ware.

specific OEM and non-OEM crash parts for which estimates have been given to GEICO and
Allstate's insureds, along with the cost of those parts.  Plaintiffs point to vendor reports produced
in similar, earlier litigation that show, by appraiser, the total number of crash parts for which
estimates have been generated for State Farm's insureds, the number of those parts that were
OEM and non-OEM, and the dollar amount saved by State Farm as a result of using non-OEM
parts.  Plaintiffs also points to documents from this separate litigation showing the actual price
paid over time for OEM and non-OEM parts, and showing the top 500 replaced parts for the year
1990 based on dollar volume, and, by part, the number and price of OEM and non-OEM parts.
In the wake of the Ninth Circuit's opinion in *Dukes*,[3] and class certification requirements
generally under Fed. R. Civ. P. 23, Plaintiffs argue that the documents are needed by their
experts to determine: (1) whether, and to what extent, the cost savings from using non-OEM
parts was passed on to consumers; and (2) statistically, whether there are class-wide injuries due
to the above-competitive rates charged to policyholders.  Plaintiffs further argue that they expect
their experts' analysis will show that Plaintiffs' claims are common to and typical of those of
other potential class members.

GEICO and Allstate both assert that they are not in "control"[4] of  the documents sought
by Plaintiffs and in the possession of third-party vendors.  GEICO also notes that it asked CCC,
which serves both GEICO and Allstate, whether it has the reports that Plaintiffs seek but that
CCC advised that it does not and will not create such reports from whole cloth in light of the
substantial burden and expense.  Allstate notes that it has asked Audatex whether it has such
reports that could be produced and that Audatex documents will in fact be produced.

Based on Allstate's representation, the court understands that Audatex documents are
within its control and therefore grants Plaintiff's motion with respect to the Audatex documents.
These documents should be produced no later than April 29, 2010.  With the respect to the CCC

---

[3]   *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 581 (9th Cir. 2010) (requiring trial
courts to "perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have been
satisfied").

[4]   Rule 34 states that a party may serve on any other party a request within the scope of
Rule 26(b) to produce designated documents or designated tangible things in the responding
party's possession, custody, or "control." *See* Fed. R. Civ. P. 34(a)(1)(A) and (B).

1    documents that remain in dispute, the court finds that Plaintiffs have not established that GEICO

2    and Allstate are in control of what Plaintiffs want from CCC.  As an initial matter, Plaintiffs'

3    complaints about GEICO and Allstate's failure of proof on the issue of whether they control

4    their vendors misapprehends which party bears the burden of proof in any dispute regarding

5    control of third-party documents.  Because they seek production of documents, that burden falls

6    squarely on Plaintiffs, not GEICO and Allstate.[5]  More fundamentally, in the Ninth Circuit,

7    control is understood as "the legal right to obtain documents upon demand."[6]   "Legal right" is

8    evaluated in the context of the facts of each case.[7]  The determination of control is often fact-

9    specific.  Central to each case is the relationship between the party and the person or entity

10   having actual possession of the documents.[8]  The requisite relationship is one where a party can

11   order the person or entity in actual possession of the documents to release them.[9]  This position

12   of control is usually the result of statute, affiliation, or employment.[10]

13        Plaintiffs have offered no evidence that GEICO and Allstate have any such legal right

14   with respect to CCC.  After GEICO and Allstate contacted CCC to request production, CCC

15   represented that GEICO and Allstate have no control over CCC and consequently that it

16   expressly "declines to provide the information voluntarily to the Insurance defendants."[11]  At

17   best, Plaintiffs have suggested that another defendant in this case–State Farm– may have

18   obtained similar documents from Audatex in similar litigation in 1999. But this is plainly

19   insufficient to show that in 2011 either GEICO or Allstate have control of the documents in

20

21       [5]    *See United States v. International Union of Petroleum and Indus. Workers, AFL-CIO,*
     870 F.2d 1450, 1452 (9th Cir. 1989).

22

23       [6]    *See id.*

24       [7]    *See In re Folding Carton Antitrust Litig.,* 76 F.R.D. 420, 423 (D.Ill 1977).

25       [8]    *See Estate of Young v. Holmes*, 134 F.R.D. 291, 294 (D.Nev. 1991).

26       [9]    *See id.*

27       [10]   *See id.  See also In re Citric Acid Litig.,* 191 F.3d 1090, 1107 (9th Cir. 1999) (holding
     that court cannot order production of documents held by a separate legal entity, where requested
28   party is not in actual possession or custody of the documents).

         [11]   *See* Docket No. 224 (Decl. Of Sheila Carmody, ¶ 10, Exh. 3).

1   possession of CCC.  As a result, Plaintiffs' motion with respect to CCC must be denied.[12]

2   **B.      Additional Responsive Allstate Documents from Claims Staff**

3            To date, Allstate limited production of responsive documents to those used by its

4   actuarial staff.  According to Plaintiffs, Allstate has not yet produced any responsive documents

5   from its claims staff.  Plaintiffs object to Allstate's effort to restrict production to what Plaintiffs

6   deem an "artificial subset" of responsive documents.

7            In response, Allstate states that it has agreed to produce responsive documents from its

8   claims department.  It therefore appears that the Allstate's claims department documents no

9   longer remain in dispute.  Accordingly, Allstate shall produce any responsive documents from its

10  claims department no later than April 29, 2011.

11  **C.      Documents Reflecting Investment Income Derived from Loss Reserve Amounts**

12           Plaintiffs' request nos. 1(h) and 1(i) seek documents showing the investment income

13  GEICO and Allstate derived from loss reserve amounts and showing their profit, return, or

14  margin for the provision of automobile insurance.  Plaintiffs argue that their experts require these

15  documents to segregate the effect of and use of non-OEM parts on premiums and whether the

16  alleged anti-competitive conspiracy has resulted in the lower cost of using non-OEM parts being

17  passed on to consumers, or retained as profits.

18           GEICO objects on relevance grounds because the gain or profit in the form of investment

19  income from loss reserve amounts would not reflect the effect of non-OEM part usage on

20  customer premiums.  Rather, GEICO explains that its premiums are based on historic losses.

21  GEICO further explains that this information would shed light on Plaintiff's theory only if

22  Plaintiffs were first able to determine how much less is paid in repair costs from using various

23  types of non-OEM parts.  GEICO denies that it maintains any such records identifying OEM and

24  non-OEM parts usage in actual vehicle repairs.   Like GEICO, Allstate contends that its rates are

25  based on actual, aggregate, historic rates and are not broken down to reflect the cost of OEM or

26

27
_____

28       [12]   As Plaintiffs' counsel conceded at the hearing, nothing appears to have prevented
      Plaintiffs from simply serving a subpoena on CCC directly.

1   non-OEM crash parts in premiums.[13]  Allstate also points out that loss reserves are not a separate

2   or segregated fund that earns investment income, but rather, an accounting entry or reserve on its

3   balance sheet that simply reflects its contingent liability on pending claims.

4         Because Plaintiffs do not dispute that GEICO and Allstate do not maintain data on actual

5   parts usage that would identify how much less is paid in repair costs from using non-OEM crash

6   parts, and further does not dispute that loss reserves are not maintained as a separate fund

7   earning investment income, the court finds that Plaintiffs have not met their burden of

8   establishing the relevance of the information that they seek.  Accordingly, Plaintiffs' motion

9   regarding document request nos. 1(h) and 1(i) is denied.

10   **D.**     **Document Request Nos. 1(a)-(c) to Allstate**

11         Plaintiffs' request nos. 1(a)-(c)  seek data that reflect whether the lower cost of non-OEM

12   parts is factored into calculating customers' premiums.  During the parties' meet and confer,

13   Plaintiffs proposed that Allstate produce data three calendar years within the class period.

14   Plaintiffs further represented that they would "help defray the costs of such a production," in

15   order to avoid any dispute under Fed. R. Civ. P. 26(b)(2).  According to Plaintiffs, Allstate

16   countered by proposing to produce documents from one calendar year within the class period as

17   a sampling, but refused to stipulate that the sampling would be representative of the entire class

18   period.

19         In its opposition, Allstate disputes Plaintiffs' characterization of the meet and confer, but

20   states that in any event it has agreed to produce data for three calendar years (the earliest

21   available year, the most recent available year, and one year in the middle of those two years).

22   Accordingly, Plaintiffs' motion to compel documents responsive to request nos. 1(a)-(c) is

23   granted.  No later than April 29, 2011, Allstate shall produce data for three calendar years (the

24   earliest available year, the most recent available year, and one year in the middle of those two

25   years).  All reasonable costs of this production shall be reimbursed by Plaintiff within 30 days of

26   receipt of invoice.

27

28      [13]   Allstate further objects because Plaintiffs seek sensitive financial information.  In light of the stipulated protective order, the court rejects this basis for withholding production.

**E.      Document Request No. 21 to Allstate**

Plaintiffs' request no. 21 seeks documents "analyzing or estimating how issuing policies throughout the United States that specify the use of non-OEM crash parts has affected Allstate's expenses or losses, and the effect of any such expenses or losses on Allstate's premiums."

Although Allstate has informed Plaintiffs that "it is not aware of any documents relating to the effect on automobile premiums from the use of non-OEM crash parts, Allstate has agreed to produce any responsive documents that relate to California only.  Plaintiffs object to the extent Allstate is withholding any documents that relate to the United States as a whole, including California.

In the Third Amended Complaint, Plaintiffs limit their claims to California policyholders. Accordingly, Plaintiffs' motion regarding document request no. 21 is granted in part and denied in part.  Allstate shall produce responsive documents that relate to California only.  Documents that relate only to states other than California are not relevant.  However, documents that relate to California and other states shall be produced.  The documents shall be produced no later April 29, 2011.

**F.      Document Request No. 6 to GEICO**

Plaintiffs' request no. 6 seeks documents sufficient to show the year, model, and make of automobiles insured by GEICO in California that have been repaired using only OEM parts.  In its opposition, GEICO declares unequivocally that it has no documents responsive to this request in its possession, custody or control.

Based on what they describe as a "cryptic response" from Defendants during meet and confer, Plaintiffs speculate that "GEICO may indeed have additional responsive documents." But mere speculation that such documents exist is not sufficient to justify an order compelling production, and Plaintiffs provide no evidence that GEICO's representation to this court should be disregarded.  Plaintiffs' motion to compel documents responsive to request no. 6 is therefore denied.

**G.      Document Request No. 8 to GEICO**

Plaintiffs' request no. 8 seeks documents relating to any analysis or study of the effect

1    either nationwide (including California) or in California of the use of OEM or non-OEM crash

2    parts on GEICO's expenses or losses or premiums or profits.

3           As with request no. 6, GEICO states unequivocally that it has no responsive documents

4    to this request.  And as with request no. 6, Plaintiffs speculate that "GEICO may well" have

5    responsive documents "and simply is refusing to produce the" but offer no evidence this is so.

6    Plaintiffs' motion to compel documents responsive to document request no. 8 is denied.

7

8                                      **III. CONCLUSION**

9           For the foregoing reasons, Plaintiffs' motions to compel are GRANTED-IN-PART and

10   DENIED-IN-PART.  As noted above, all responsive discovery ordered herein shall be served no

11   later than April 29, 2011.

12          IT IS SO ORDERED.

13   Dated:   April 11, 2011

14                                      _____
                                        PAUL S. GREWAL
15                                      United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28