UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SARAH PEREZ, ET AL.,<br><br>        Plaintiffs,<br>v.<br><br>STATE FARM MUTUAL<br>AUTOMOBILE INS. CO., ET AL.,<br><br>        Defendants. | Case No.: C-06-01962 JW (PSG)<br><br>**ORDER SETTING MERITS DISCOVERY PLAN PURSUANT TO MARCH 23, 2011 REFERRAL; ORDER GRANTING-IN-PART PLAINTIFFS' MOTION TO COMPEL**<br><br>(Docket Nos. 197, 252) |

On March 23, 2011, Chief Judge Ware referred the parties to the undersigned for a merits discovery plan for the limited purpose of addressing the issues set forth in R. Stephen Berry's declaration in support of Plaintiffs' Rule 56(d) request.[1] Judge Ware's referral followed a denial of State Farm Mutual Automobile Insurance Company ("State Farm") and Liberty Mutual Fire Insurance Company's ("Liberty Mutual") motions for summary judgment. On April 14, 2011, the parties appeared for a status conference. Because the discovery required under the March 23 order overlaps with the discovery at issue in Plaintiffs' January 24, 2011 motion to compel discovery from State Farm and Liberty Mutual, the court will address all such discovery together as set forth below.

---

[1] *See* Docket Nos. 251 and 238-1.

ORDER, *page 1*

## I. THE BERRY DECLARATION

In light of various assertions made by State Farm and Liberty Mutual in their summary judgment papers, the Berry Declaration sets forth the following categories of discovery Plaintiffs seek:

1. State Farm and Liberty Mutual's claims regarding the adoption of policies permitting use of non-OEM parts in estimates provided to their customers;
2. The use of non-OEM parts to repair Defendants' customers' vehicles;
3. Whether non-OEM parts are of like kind and quality as OEM parts;
4. Defendants' involvement with CAPA;
5. Information concerning CAPA's funding and control by insurance companies, including Defendants; and
6. Defendants' agreements with repair shops.

The Berry Declaration also states that discovery concerning the following remains outstanding:

1. What non-OEM and OEM parts actually are provided under Defendants' policies; and
2. Related litigation involving crash parts and Defendants' involvement with CAPA.

The Berry Declaration further seeks to depose each of Defendants' witnesses that has submitted a declaration in support of the previously filed summary judgment motions, and further requests all of the documents and information that any witness reviewed in the process of providing their declarations. The witnesses include the following:

1. Maureen Willet;
2. Warren Farrar;
3. Anthony Ferrara;
4. John Hubert;
5. James Brandt;
6. Craig Isaacs;
7. Ina Becraft; and
8. Brian O'Connor.

## II. PLAINTIFFS' PROPOSAL

Plaintiffs propose serving 10 document requests and 10 interrogatories each on State Farm and Liberty Mutual regarding a portion of the categories identified in the Berry Declaration. Plaintiffs describe this portion as follows:

1. State Farm and Liberty Mutual's claims that they each adopted a policy not to specify the use of non-OEM crash parts, and State Farm's assertion in its Reply Memorandum that "State Farm allows shops to use non-OEM crash parts only when specifically requested by the customer."

2. State Farm's claim in its Motion for Summary Judgment that: "CAPA derives revenue from having its stickers affixed to CAPA-certified parts . . It would, therefore, be self-defeating for a conspiracy aimed at promoting use of CAPA-certified parts to also promote two kinds of directly competing parts," and Liberty Mutual's claims that plaintiffs' allegation that Liberty Mutual continues to support CAPA is a "shell game."

3. State Farm's assertion in its Motion for Summary Judgment that certain decisions were made by State Farm unilaterally, and entirely independent of the other State Farm and Liberty Mutual (including CAPA).

4. State Farm's assertion in its Reply Memorandum that certain allegations in the TAC concerning "inferior" parts are "factually unsupported," and Liberty Mutual's assertion that "plaintiffs' allegation that salvage parts are inferior rests on pure speculation."

5. State Farm witness Warren Farrar's statement that "State Farm believes the presence of non-OEM parts . . reduced the cost of insurance."

6. State Farm's assertion that the term "competitively priced parts" in its agreements with repair shops means "buying from a source that charges a market price for that particular part," regardless of the type of part.

7. State Farm's assertion that the allegations described at pages 6:1-22, 14:12-18, and 18:12-19:11 of Plaintiffs' opposition to State Farm's motion for Summary Judgment are "not evidence," and that Plaintiff "must seek relief under Rule 56(d)" to back them up.

8. Liberty Mutual's assertions that "[i]f the insured wants an OEM sheet metal crash part and it is available, that part is installed," and that "Liberty Mutual implemented a company-wide policy to 'pay for OEM structural sheet metal crash parts when available."

9. Liberty Mutual's assertion in its Motion for Summary Judgment that "Liberty Mutual" could not realize increased profits by excluding providers of OEM policies."

Plaintiffs further propose to take depositions of the individuals identified in the Berry Declaration, and offer a schedule by which all of its requested discovery be completed.

### III. STATE FARM'S PROPOSAL

State Farm states that Plaintiffs are entitled to only the following two categories of discovery: (1) whether during the putative class period State Farm has required use of CAPA-certified crash parts; and (2) whether there is any economic plausibility to Perez's assertion that the conspiracy to misrepresent the quality of new, non-OEM, CAPA-certified crash parts also included misrepresenting the quality of directly competing "Recycled" OEM parts. State Farm asserts that Plaintiffs have not sought discovery regarding the second category, so only the first category of discovery is truly at issue.

State Farm notes that it previously produced California rate filings for the period from 2002 to the present along with Perez's policy file. State Farm also notes that it has produced an exemplar of its California insurance policies and copies of each of the forms of agreement that State Farm has had with California body shops during the putative class period. State Farm pledges that it will produce the 1999 memo announcing the policy of not specifying non-OEM crash parts as well as any follow-up memos or reminders.

To satisfy fully its obligation under Rule 56(d) and the March 23 order, State Farm proposes a production of a sampling of its estimates to determine whether what is actually written on the estimates is consistent with State Farm's claim that it does not specify or encourage third-party body shops to specify non-OEM crash parts and that such parts are used only in relatively rare situations. According to State Farm, these situations include where the customer wants her car back as soon as possible and a non-OEM crash part is available sooner than an OEM crash part. State Farm proposes to use a randomized sample of "several hundred" estimates.

Under the State Farm proposal, other discovery would be held in abeyance until the sampling is completed and the parties are able to review the results.

### IV. LIBERTY MUTUAL'S PROPOSAL

Liberty Mutual states that its standard claims procedures require estimates based on the use of OEM crash parts. Therefore, the only discovery to which Plaintiffs are entitled is Liberty Mutual's standard claims procedures.

Liberty Mutual notes that it has produced its auto appraisal manual (which instructs Liberty Mutual appraisers in their duties) and its facility appraisal manual (which instructs body shops) for the class period.

To fully satisfy its obligations under Rule 56(d) and the March 23 order, Liberty Mutual proposes producing a random sample of appraisals and payments from 120 California auto property damage claim files spread across the class period demonstrating compliance with its standard procedures.

Liberty Mutual further proposes to tender Brian O'Connor for deposition to testify regarding Liberty Mutual's standard OEM crash parts claims procedures during the class period.

## V. CONCLUSION

Judge Ware has made it clear that discovery on the range of issues in the Berry Declaration needs to move forward. Having reviewed the parties' proposals and considered the arguments of counsel, the court orders the following:

1. No later than April 29, 2011, Plaintiffs may serve State Farm and Liberty Mutual no more than 10 document requests and 10 interrogatories each on the issues set forth in Section II, 1-9 above;

2. No later than May 27, 2011, State Farm and Liberty Mutual shall respond to those requests and produce a statistically valid sample of all documents, including estimates, appraisals and payments, responsive both the requests above, as well as Plaintiffs' Document Request Nos. 1(a)-(d), 2(a)-(d), 3, 4, 5, 8, 9, 10, 11, 12, 17, 18, 19-21, 25, 26, 27.  If State Farm and Liberty Mutual wish to avoid a further order compelling production of all documents responsive to these requests, then each must stipulate in writing that the sample produced is statistically valid and representative of all responsive documents, and that it will not argue that Plaintiffs showing under requirements of Federal Rule of Civil Procedure 23 or 56 is deficient based on any responsive documents not produced as part of the

1         sample.[2]

2    3.    No later than May 27, 2011, State Farm and Liberty Mutual shall respond to Plaintiffs' Interrogatory No. 18.

   4.    No later than May 27, 2011, Liberty Mutual shall produce California-specific, disaggregated data from Audatex regarding the prices for OEM and non-OEM crash parts by vehicle model.[3]

   5.    No later than July 3, 2011, Plaintiffs may depose any of State Farm or Liberty Mutual's witnesses who provided declarations in support of State Farm and Liberty Mutual's respective summary judgment motions.

Finally, the court finds it necessary to require the parties, including Defendants GEICO General Insurance Company and Allstate Indemnity Company, to appear monthly to present any outstanding discovery disputes, as follows.[4]

Rather than by following the procedures set forth in Civ. L.R. 7-1 *et seq.*, a party seeking to compel discovery or secure a protective order shall file a notice of a one-hour hearing for the last Friday of each month (beginning April 29, 2011) at 10AM (exceeding no more than 3 pages in letter-brief format) on the preceding Tuesday of that same week. The party to whom the request is directed may file a response (also not to exceed 3 pages in letter-brief format) by the end of business on Wednesday of that same week. In advance of filing any

---

[2]   *See* Advisory Committee Notes to 2006 Amendments to Rule 26(b)(2) ("[T]he parties may need some focused discovery, which may include sampling of the sources, to learn more about what burdens and costs are involved in accessing the information, what the information consist of, and how valuable it is for the litigation in light of information that can be obtained by exhausting other opportunities for discovery."); *Kipperman v. Onex Corp.,* 260 F.R.D. 682 (N.D. Ga. 2009). *Cf. Ralston v. Mortgage Investors Group, Inc.,* Case No. 08-0536 JF (PSG), Docket No. 181, *aff'd,* Docket No. 228.

[3]   All other relief requested in Plaintiffs' motion to compel is denied.

[4]   *See* Docket No. 298.

1  request with the court, the parties shall meet and confer.[5]

2  IT IS SO ORDERED.

3  Dated:   April 22, 2011

*[signature: Paul S. Grewal]*

PAUL S. GREWAL
United States Magistrate Judge

---

[5] *See* Civ. L.R. 1-5(n).

ORDER, *page 7*